## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re

KaloBios Pharmaceuticals, Inc.

                   Debtor.[1]

Chapter 11

Case No. 15-     (   )

### EMERGENCY *EX PARTE* MOTION OF THE DEBTOR FOR ORDER AUTHORIZING THE DEBTOR TO HONOR PREPETITION PAYROLL OBLIGATIONS

KaloBios Pharmaceuticals, Inc. ("KaloBios" or the "Debtor"), the debtor and debtor in possession, by and through its undersigned proposed counsel, hereby moves this Court, on an emergency *ex parte* basis, for an order pursuant to sections 105, 363(b), and 507(a) of title 11 of the United States Code (the "Bankruptcy Code") authorizing KaloBios to pay or otherwise honor its employee-related prepetition obligations to, or for the benefit of, employees and granting related relief.  In support of the Motion, KaloBios states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105(a), 363(b), and 507(a) of the Bankruptcy Code, Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013(m) of the Local Rules of

---

[1]     The last four digits of the Debtor's federal tax identification number are 7236.  The Debtor's address is 442 Littlefield Ave., San Francisco, CA 94080.

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

3.     The Debtor consents pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## RELEVANT BACKGROUND

4.     On December 29, 2015 (the "Petition Date"), KaloBios filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.     KaloBios continues to manage and operate its business and its property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner or committee has been appointed in this case.

6.     KaloBios is a publicly traded (ticker symbol: KBIO) biopharmaceutical company dedicated to helping the lives of patients with innovative therapies. Its mission is to improve the lives of cancer patients with innovative, Humaneered®, monoclonal antibodies.

7.     KaloBios's pipeline of Humaneered® antibodies being investigated in clinical development programs are focused on treating cancer, including the following:

(a)     KB004 (anti-EphA3) Humaneered® mAb to treat patients with hematologic malignancies, solid tumors, and their stem cells; and

(b)     KB003 (anti-GM-CSF) Humaneered® mAb, which KaloBios intends to evaluate in oncology indications where GM-CSF may play a key role in such indications as chronic myelomonocytic leukemia.

*Events Prior to Commencing the Chapter 11 Case*

8.       By a Form 8-K filed with the Securities and Exchange Commission ("SEC") on November 9, 2015, KaloBios announced that, as of November 5, 2015, the Board of Directors of KaloBios approved a restructuring plan involving, among other measures, reductions in headcount as part of a plan to reduce operating costs.   The positions eliminated represented approximately 61% of KaloBios' workforce.

9.       The aim of this restructuring was to allow KaloBios to focus its limited resources on the ongoing development of lenzilumab (also known as KB003) as a treatment for chronic monomyelocytic leukemia.   As a part of its restructuring, KaloBios also announced that it would pause enrollment in the Phase 2 cohort expansion phase of its ongoing clinical study of KB004 in certain hematologic malignancies.

10.       KaloBios also announced its intent to repay in full its outstanding loan obligations to MidCap Financial, its secured lender.    KaloBios expected this move to generate significant cash savings when compared to repayment of the debt in the ordinary course of business.   KaloBios thereafter implemented this aspect of its restructuring plan by repaying approximately $6.6 million of outstanding loan obligations to MidCap Financial.   As a result, KaloBios currently has no appreciable secured debt.

11.       By a Form 8-K filed with the SEC on November 23, 2015, KaloBios announced that, on November 17, 2015, Martin Shkreli, David Moradi (through Anthion Partners II LLC ("Anthion"), a private investment vehicle of which Mr. Moradi is the Managing Member) and Marek Biestek acquired over 50.1% of the Company's outstanding shares of common stock in the aggregate through open market purchases.

12.     In the same November 23 Form 8-K, the Company announced that, on November 19, 2015, it terminated Mr. Herb Cross from his position as Interim President, Chief Executive Officer and Chief Financial Officer of the Company, effective immediately, and Mr. Shkreli was appointed as Chief Executive Officer of the Company and elected as Chairman of the Board.

13.     By a Form 8-K filed with the SEC on December 9, 2015, KaloBios announced that it entered into entered into a Securities Purchase Agreement with the purchasers identified therein relating to a private placement (the "PIPE") by the Company of up to an aggregate 511,596 shares of the Company's common stock, par value $0.001 per share, at a purchase price of $29.32 per share, or up to $15,000,000.

14.     By a Form 8-K filed with the SEC on December 16, 2015, KaloBios announced that it entered into an amendment to the Securities Purchase Agreement on December 15, 2015, pursuant to which the per share price was amended to be $24.85 for investors other than persons who are officers, directors, employees or consultants of KaloBios, the number of shares was reduced to 350,224, and the aggregate purchase price of the PIPE was adjusted to $8,818,000.

15.     The Company received approximately $8,083,194 in proceeds from the PIPE.

16.     On December 17, 2015, Mr. Shkreli was arrested following a federal indictment, charging him with multiple counts of securities fraud, securities fraud conspiracy, and wire fraud conspiracy.  According the U.S. Department of Justice's press release announcing the indictment,[2] the indictment relates to Mr. Shkreli's tenure as CEO of Retrophin, Inc., a

---

[2]     *See*     http://www.justice.gov/usao-edny/pr/former-hedge-fund-manager-and-new-york-attorney-indicted-multimillion-dollar-fraud

biopharmaceutical company that trades under the ticker symbol RTRX, and as founder and managing member of hedge funds MSMB Capital Management LP (MSMB Capital) and MSMB Healthcare Management LP (MSMB Healthcare).

17.    On December 17, 2015, NASDAQ halted trading in KaloBios stock.  As of the date hereof, trading has not resumed.

18.    By a Form 8-K filed with the SEC on December 21, 2015, KaloBios announced that, on December 17, 2015, Mr. Shkreli was terminated as CEO of KaloBios and resigned from KaloBios' Board of Directors.  In addition, on December 17, 2015, Tony Chase resigned from the Company's Board of Directors and from its Audit Committee.

19.    By a Form 8-K filed with the SEC on December 23, 2015, KaloBios announced that, on December 18, 2015, it received a letter from NASDAQ indicating that NASDAQ intended to delist KaloBios' securities under its discretionary authority.  NASDAQ cited number of reasons for their decision, including, among other things, the recent criminal indictment and arrest of Mr. Shkreli.

20.    By the same December 23 Form 8-K, the Company also announced that its independent registered public accounting firm, Marcum LLP, resigned, and its Interim Chief Financial Officer, Christopher Thorn, submitted his resignation.

21.    By a Form 8-K filed with the SEC on December 28, 2015, KaloBios announced that, on December 27, 2015, Tom Fernandez and Marek Biestek resigned as members of the Board of Directors of KaloBios.

***The Chapter 11 Case***

22.    The challenges facing KaloBios have been widely reported on by the media and are the subject of numerous recent SEC filings, some of which are summarized above.

These events have been significantly disruptive to KaloBios' efforts to address its liquidity concerns and implement an out-of-court restructuring.

23.     Nevertheless, prior to the commencement of this chapter 11 case, KaloBios' reconstituted board of directors, with the assistance of its legal and financial advisors, had been making renewed efforts to stabilize and preserve the value of KaloBios' business and assets.  Such actions have included the engagement on December 23, 2015, of Eugene I. Davis of Pirinate Consulting Group LLC, an experienced turnaround manager, to serve as the Debtor's Chief Restructuring Officer.

24.     The commencement of this chapter 11 case is a further step in KaloBios' efforts to implement a restructuring for the benefit of its creditors and other stakeholders.  The Debtor intends to make use of the breathing spell afforded it by the imposition of the automatic stay to further evaluate its strategic alternatives with input from its various stakeholders and to develop and implement a revised restructuring plan.

25.     Unfortunately, one consequence of this recent turmoil has necessitated that KaloBios seek bankruptcy protection on an emergency basis.  KaloBios perceived an imminent threat that, absent a bankruptcy filing and the imposition of the automatic stay, a significant portion of its liquid assets were at risk.  Accordingly, KaloBios has commenced this chapter 11 case at this time to preserve its assets and ensure that it has the best possible opportunity to implement a restructuring for the benefit of all its stakeholders.

26.     KaloBios, with the assistance of its legal and financial advisors, is currently preparing several typical motions and applications for first day relief, which it expects to be in a position to file in short order.  Meanwhile, the Debtor has a pressing need for the

limited emergency relief requested by this Motion to minimize further disruption to its business and to ensure that its remaining employees do not experience undue hardship.

***The Prepetition Employee Obligations***

27.     As of the Petition Date, KaloBios had a workforce of approximately eight employees.

28.     KaloBios pays its employees semi-monthly, with payroll being issued on the 15th and last day of each month for the prior half-month period.  Payroll is handled by third-party administrator, ADP, LLC ("ADP").  KaloBios' next two-week payroll is scheduled to paid on December 31, 2015.

29.     Prior to the Petition Date, KaloBios authorized and began processing the December 31 payroll.  However, due to the emergent nature of the chapter 11 filing, ADP and/or KaloBios' bank or ADP's bank may yet to have taken all actions necessary to debit KaloBios' account, thereby fully funding and processing the December 31 payroll payment.

30.     Therefore, out of an abundance of caution, KaloBios brings this emergency *ex parte* motion for authority to take all actions, and permit ADP and others to take all actions, necessary to process and pay the December 31 payroll.

31.     The aggregate amount of the December 31 payroll is estimated to be $55,891.89.  In addition, KaloBios owes employee expense reimbursement obligations for the same two-week period of approximately $3,552.55.

32.     KaloBios believes that no single employee is scheduled to receive more than $12,475.00 in salary, wages, and expense reimbursement in the December 31 payroll payment.

33.     Further, KaloBios believes that none of the employees are "insiders" within the meaning in section 101(31) of the Bankruptcy Code.

34.     As part of the December 31 payroll, KaloBios is also obligated to withhold certain mandatory deductions (including federal, state, and local taxes) as well as other voluntary deductions (such as contributions for medical, dental, and vision plan premiums, or 401k or employee stock programs) from the employees' wages and salaries.  Such withholdings are then forwarded by KaloBios or ADP to the applicable providers or authorities.

## RELIEF REQUESTED

35.     By this Motion, KaloBios requests the entry of an order authorizing it to pay or otherwise honor its employee-related prepetition obligations to, or for the benefit of, employees.

## BASIS FOR RELIEF

36.     Bankruptcy Code section 507(a)(4) gives priority up to $12,475 per individual for prepetition claims for wages, salaries, and commissions earned in the 180 days prior to the Petition Date.  Section 507(a)(5) further provides priority for contributions to an employee benefit plan when the payments arise from services rendered within 180 days of the Petition Date, and the total amount of all payments does not exceed $12,475 multiplied by the number of employees covered by the plan, less any amounts paid under section 507(a)(4) or to any other benefit plan.  In particular, section 507(a) of the Bankruptcy Code grants a priority claim for the following:

> (4)     [A]llowed unsecured claims, but only to the extent of $12,475 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of cessation of the debtor's business ... for-

(A)     wages, salaries, commissions, including vacation,
        severance, and sick leave pay earned by an individual;

11 U.S.C. §507(a)(4).

37.     KaloBios believes that all of the payroll obligations identified herein are entitled to priority under section 507(a)(4) of the Bankruptcy Code. Paying these obligations in the ordinary course of business therefore simply accelerates the timing of payment of obligations that otherwise would be paid as an administrative expense, thereby doing no violence to the priority scheme set forth in the Bankruptcy Code.

38.     This Court may also authorize the proposed payment of the obligations under section 363(b)(1) of the Bankruptcy Code. See, e.g., In re UAL Corp., Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 11, 2002).  Section 363(b)(1) of the Bankruptcy Code authorizes a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  See 11 U.S.C. § 363(b)(1). Although stated various ways, courts generally hold that a debtor's decision to enter into a transaction outside of the ordinary course of business is governed by the business judgment standard.  3 COLLIERS ON BANKRUPTCY, ¶ 363.01 [l][g] (15th ed. 2002): See In re U.S. Airways Group. Inc., 287 B.R. 643, 645 (Bankr. E.D. Va. 2002).

39.     When applying the "business judgment" rule, courts show great deference to the debtor's decision making.  See, e.g., Official Comm. of Unsecured Creditors of Cyber denies Corp. v. Chinery, 330 F.3d 548, 575 (3d Cir. 2003); In re Fernwood Markets, 73 B.R. 616 (Bankr. E.D. Pa. 1987).  KaloBios submits that, because the prepetition employee obligations are entitled priority status, and because the retention of KaloBios' workforce is vital to ongoing operations and its prospects for successfully reorganizing, it is in the best interest of KaloBios' estate to pay such claims in the ordinary course of business during this chapter 11 case. In re

<u>Lehigh & New England Rv. Co</u>., 657 F.2d 570, 581 (3d Cir. 1981); <u>In re Sharon Steel Corp</u>., 159 B.R. 730, 736 (Bankr. W.D. Pa. 1993) (authorizing payment of employee obligations as critical to a debtor's reorganization).

40.    KaloBios does not believe that the prepetition amounts owing to any individual employee (including any uncashed paychecks) exceeds the $12,475 priority cap contained in section 507 of the Bankruptcy Code.   In any event, however, section 363(b)(1) authorizes a debtor to use estate property other than in the ordinary course of business, if there is a sound business justification for doing so.   Here, there can be little doubt that keeping prepetition employee obligations current, particularly when such obligations have priority status, is a reasonable exercise of KaloBios' business judgment.

41.    KaloBios believes that the value of its business will be maximized, and operational disruptions caused by the bankruptcy will be minimized by the payment of all prepetition employee obligations identified herein in full and in the ordinary course of business. The continued service and dedication of the employees is critical to KaloBios and the prospects for a successful reorganization.

42.    Alternatively, section 105 of the Bankruptcy Code permits a bankruptcy court to authorize the payment of prepetition debts where it is necessary for a successful reorganization.  Section 105 of the Bankruptcy Code provides, in relevant part, as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105(a).  The power of a court to authorize payment of prepetition claims pursuant to section 105 of the Bankruptcy Code outside of the context of a plan of reorganization in a chapter 11 case has often been referred to as the "doctrine of necessity" or alternatively the "necessity of payment" rule.  This rule recognizes the power of a court to authorize a debtor in a

reorganization case to pay prepetition claims where such payment is essential to the continued operation of a debtor.  See, e.g., In re Just for Feet, Inc., 242 B.R. 821 (D. Del. 1999); In re Ionosphere Clubs, Inc., 98 R.R. 174, 176 (Bankr. S.D.N.Y. 1989); In re Chateauguay Corp., 80 R.R. 279 (S.D.N.Y. 1987); see also In re Lehigh & New England Railway Co., 657 F.2d 570, 581 (3rd Cir. 1981) ("The necessity of payments doctrine . . . [permits] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid.").  As described above, payment of the prepetition employee obligations is absolutely crucial to KaloBios' ability to reorganize.  If the relief sought is not granted, the risk that the employees will leave will be heightened substantially and KaloBios' business operations will be irreparably harmed.  Additionally, it would be inequitable to require the employees to personally bear the costs of KaloBios' business expenses.  Accordingly, this Court has the authority under the necessity of payments doctrine to grant the relief requested herein.  Bankruptcy courts have consistently authorized a debtor to pay prepetition obligations pursuant to section 105(a) of the Bankruptcy Code. See, e.g., In re Lehigh and New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981).

43.    To facilitate the implementation of the requested relief, KaloBios seeks an order directing ADP and all banks to honor prepetition checks, wire transfers, or ACH transactions for payment of the prepetition employee obligations authorized by the Court. KaloBios also seeks authority to issue new postpetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the filing of KaloBios chapter 11 case.

**FEDERAL RULES OF BANKRUPTCY PROCEDURE 6003 & 6004**

44.    As described above, it is imperative that the employees continue in KaloBios' employ.  They could not reasonably be expected to continue working for KaloBios

absent the continuity of payroll and related compensation payments.  Because the continued employment of the employees is vital to the success of this chapter 11 case, any delay in paying the prepetition employee obligations will severely disrupt KaloBios relationship with its employees and would likely result in immediate, irreparable harm to KaloBios' operations and financial welfare, putting KaloBios' bankruptcy estate at risk.  Accordingly, KaloBios submits that it has satisfied the requirements of Bankruptcy Rule 6003 to support the relief sought herein being granted within 21 days of the Petition Date.

45.    In order to effectively implement the foregoing, KaloBios seeks a waiver of the notice requirements and the stay of the order authorizing the use, sale or lease of property of the estate under Bankruptcy Rules 6004(a) and 6004(h), to the extent such provisions are applicable.

## NOTICE

46.    Copies of this Motion were served on the Office of the United States Trustee for the District of Delaware.  In light of the *ex parte* relief requested, KaloBios submits that no further notice need be given.  Any order entered hereon will be served in accordance with Del. Bankr. L.R. 9013(m)(iv).

WHEREFORE, KaloBios respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A** authorizing KaloBios to pay or otherwise honor its prepetition employee obligations, and granting such other and further relief as is just and proper.

Dated:    December 29, 2015          MORRIS, NICHOLS, ARSHT & TUNNELL LLP
          Wilmington, Delaware

                                      */s/ Matthew B. Harvey*_____
                                      Eric D. Schwartz (No. 3134)
                                      Gregory W. Werkheiser (No. 3553)
                                      Matthew B. Harvey (No. 5186)
                                      1201 N. Market St., 16th Floor
                                      PO Box 1347
                                      Wilmington, DE  19899-1347
                                      Telephone: (302) 658-9200
                                      Facsimile: (302) 658-3989
                                      eschwartz@mnat.com
                                      gwerkheiser@mnat.com
                                      mharvey@mnat.com


                                      *Proposed Counsel for Debtor*
                                      *and Debtor in Possession*

9738467.4