IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| KaloBios Pharmaceuticals, Inc. | Case No. 15-12628 (LSS) |
| Debtor.[1] | **Re: D.I. 238 & 273** |

**ORDER: (I) APPROVING AMENDED LETTER OF INTENT AND
AMENDED TERM SHEET, EACH DATED MARCH 18, 2016, WITH
NOMIS BAY LTD AND FUNDS MANAGED BY BLACK HORSE
CAPITAL LP, BLACK HORSE CAPITAL MASTER FUND LTD. AND
CHEVAL HOLDINGS, LTD.; (II) APPROVING BIDDING PROCEDURES
GOVERNING SUBMISSION AND CONSIDERATION OF COMPETING
AND SUPPLEMENTAL PLAN SPONSORSHIP PROPOSALS; (III)
APPROVING BREAKUP FEE; (IV) SCHEDULING AND AUTHORIZING
THE DEBTOR TO CONDUCT AN AUCTION PURSUANT TO SUCH
PROCEDURES; AND (V) GRANTING RELATED RELIEF**

Upon the motion, dated March 10, 2016 (D.I. 238) (the "Motion", as amended by

the notice of amendment, dated March 18, 2016 (D.I. 273) (the "Amendment Notice," and

together with the Motion, the "Amended Motion")[2] of KaloBios Pharmaceuticals, Inc., as debtor

and debtor in possession (the "Debtor"), for entry of an order under sections 105(a), 363(b), 503

and 507 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), and Rules

2002 and 6004 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy

Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure

of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (i)

approving Debtor's entry into that certain Amended Letter of Intent and annexed Amended Term

Sheet, each dated March 18, 2016 (collectively, as attached as Exhibit A to the Amendment

---

[1]    The last four digits of the Debtor's federal tax identification number are 7236. The Debtor's
address is 442 Littlefield Ave., San Francisco, CA 94080.

[2]    Capitalized terms not defined herein are defined in the Amended Motion or, if not defined
therein, the Bidding Procedures (as defined below).

Notice, the "Amended LOI"), between the Debtor and Nomis Bay LTD and funds managed by Black Horse Capital LP, Black Horse Capital Master Fund Ltd. and Cheval Holdings, Ltd. (collectively with such additional parties and assignees ad permitted by the Amended LOI, the "Stalking Horse"); (ii) approving the bidding and auction procedures annexed hereto as **Exhibit 1** (the "Bidding Procedures") to govern the submission and consideration of competing plan proposals for Primary Plan Transactions and supplemental plan sponsorship proposals for Secondary Plan Transactions (each, a "Plan Transaction" and collectively, the "Plan Transactions"), (iii) approving and authorizing the Breakup Fee, (iv) scheduling and authorizing the Debtor to conduct an auction for Plan Transactions (the "Auction"), (v) approving the Procedures Notice and the related noticing procedures, and (vi) granting related relief; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor;

### IT IS HEREBY FOUND AND DETERMINED THAT:

A.    The Court has exclusive jurisdiction over this matter and over the property of the Debtor and its bankruptcy estate pursuant to 28 U.S.C. §§ 157(a) and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).  Venue of this case and the Amended Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The Debtor has provided due and proper notice of the Amended Motion and the relief requested therein, including the Bidding Procedures and the Breakup Fee.

C.    The Debtor has articulated good and sufficient reasons for the Court to approve the Bidding Procedures.  Such good and sufficient reasons set forth in the Amended

Motion are incorporated by reference herein, and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

D.    The Debtor has demonstrated a compelling and sound business justification for approval of the Bidding Procedures and for entering into the Amended LOI.

E.    The Bidding Procedures are commercially reasonable, necessary and appropriate, and represent the best method for maximizing the realizable value of the Plan Transactions.  The Bidding Procedures were negotiated at arms'-length and in good faith between the Debtor and the Stalking Horse.  The Stalking Horse has conditioned its bid on the provisions of the Amended LOI, including the Breakup Fee.

F.    The Breakup Fee is fair and reasonable, was negotiated at arms'-length and in good faith, and provides a significant and demonstrable benefit to the Debtor's estate, creditors, equity interest holders and other stakeholders.

G.    Debtor's obligations to make the payments or other conveyances required by the Breakup Fee, both under this Order and upon the conditions set forth in the Amended LOI, are (i) actual and necessary costs of preserving the Debtor's estate within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (ii) of substantial benefit to the Debtor's estate, (iii) reasonable and appropriate, including in light of the size and nature of the Plan Transaction, and the efforts that have been and will be expended by the Stalking Horse in connection with the Plan Transaction, and (iv) a material inducement for, and condition necessary to ensure that, the Stalking Horse pursues the Plan Transaction.

H.    Entry of this Order is in the best interests of the Debtor and its estate, creditors, equity interest holders and all other parties-in-interest.

QB\39131424.2

I.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

J.    To the extent any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

### THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Amended Motion is GRANTED, as set forth herein.

2.    All objections and reservations of rights, including the filings by the United States Trustee (D.I. 271) and the PIPE Plaintiffs (D.I. 272), filed in response to the Amended Motion or the relief requested therein that have not been withdrawn, waived or settled are specifically addressed in this Order or are otherwise overruled on the merits.

### Approval of the Amended LOI

3.    The Amended LOI, a copy of which is attached as Exhibit A to the Amendment Notice, is hereby approved in its entirety as set forth herein, and Debtor is authorized to take any and all actions to implement the terms thereof. For the avoidance of doubt, approval of the Amended LOI does not itself constitute approval of the terms of the proposed DIP Financing and/or Exit Financing, or authorization for the Debtor to consummate those transactions. The Debtor will seek approval of the DIP Financing and/or Exit Financing, as appropriate.

### Approval of the Bidding Procedures

4.    The Bidding Procedures for the Plan Transactions, as set forth in **Exhibit 1** attached hereto, are hereby approved in their entirety. The failure to specifically include or reference any particular provision of the Bidding Procedures in this Order shall not

diminish or impair the effectiveness of such provision, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

5. The Debtor is authorized to take or to refrain from taking any and all actions necessary or appropriate to implement the terms of the Bidding Procedures, and relief granted in this Order, without further order of the Court.

### Approval of the Bid Protections

6. Pursuant to sections 105, 363, 503 and 507 of the Bankruptcy Code, the Debtor is hereby authorized to pay or otherwise provide the Stalking Horse with the Breakup Fee, and the Breakup Fee is hereby approved *provided that* substantially complete Loan Documents and Exit Financing Documents (each as defined in the Amended LOI) are signed by the Debtor and the Stalking Horse on or before April 7, 2016; *provided further* that this Order is without prejudice to (a) the Stalking Horse's right to request the Court to direct the Debtor to pay or otherwise provide the Breakup Fee if the Stalking Horse and the Debtor do not execute Loan Documents and Exit Financing Documents by April 7, 2016, and (b) the rights of any party in interest to oppose such a request by the Stalking Horse.

7. For the period commencing on the date of entry of this Order and continuing through and including the earlier of (x) the execution by the Stalking Horse and the Debtor of the Loan Documents and the Exit Financing Documents and (y) April 1, 2016 (the "No Shop Period"), the Debtor shall not, and shall cause its officers, directors, managers, employees, agents and representatives (including any investment banker, financial advisor, accountant, legal counsel, agent, representative or expert retained by or acting on behalf of the Debtor) not to, directly or indirectly, initiate or solicit the submission of any inquiries, proposals or offers with any person or entity (other than the Stalking Horse and its representatives) with respect to any transaction (or series of transactions) involving: (a) the direct or indirect sale,

transfer or other disposition outside of the ordinary course of business of any of the Debtor's intellectual property or other assets, except in accordance with the Savant Postpetition LOI; (b) any alternative DIP financing and/or exit financing proposal to the DIP Financing and/or Exit Financing contemplated by the Amended LOI; and/or (c) any sale or other disposition of common stock or other equity securities of the Debtor as reorganized pursuant to a plan of reorganization or otherwise that, if consummated, would render the Debtor unable to perform its obligations under the Amended LOI and/or this Order. For the avoidance of doubt, nothing in this paragraph precludes the Debtor or any person or entity acting on behalf of the Debtor, during the No Shop Period or otherwise, from (i) providing copies of the Amended LOI and this Order (including its exhibits) to any person or entity, including, without limitation, serving the Procedures Notice as provided in this Order, and (ii) responding to inquiries from and negotiating or entering into any agreements or understandings with any person or entity that approaches the Debtor about any potential transaction, including any transaction that would constitute a Proposed Transaction (as defined in the Bidding Procedures).

8.      Notwithstanding anything to the contrary in the Amended LOI or the Amended Motion, unless otherwise agreed by the Debtor, the Stalking Horse shall provide the Debtor with substantially complete drafts of the Loan Documents and Exit Financing Documents for Debtor's review by no later than 6 p.m. Eastern time on March 25, 2016.

9.      Notwithstanding anything to the contrary in the Amended LOI or the Amended Motion, the Loan Documents and Exit Financing Documents shall be executed by the Debtor and the Stalking Horse by April 1, 2016, unless the Debtor and the Stalking Horse agree to extend such date to April 7, 2016.

10. The Debtor's obligations to pay or otherwise carry out the terms of the Breakup Fee, as provided by this Order and the Amended LOI, shall survive termination of the Amended LOI, any of the Loan Documents or any of the Exit Financing Documents (collectively, the "Stalking Horse Agreements").

11. Except for the Stalking Horse, no other party submitting an offer for a Proposed Transaction (as defined in the Bidding procedures), whether or not a Qualified Bid (as defined in the Bidding Procedures) shall be entitled to any expense reimbursement, breakup, termination or similar fee or payment.

12. The Debtor's obligations with respect to the Breakup Fee under this Order, the provisions of this Order, and the Amended LOI (or if superseded by the Stalking Horse Agreements, the Stalking Horse Agreements) shall survive confirmation of any plan of reorganization or discharge of claims thereunder.

### Approval of the Procedures Notice

13. The form of the Procedures Notice attached hereto as **Exhibit 2** is hereby approved in all respects. All parties in interest shall receive or be deemed to have received good and sufficient notice of the solicitation of offers for Proposed Transactions and the Auction if the Procedures Notice is served by first class mail, postage prepaid, within three (3) business days of entry of this Order upon: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the PIPE Plaintiffs; (c) counsel to the named plaintiffs in the Shareholder Litigations; (d) counsel to Savant; (e) counsel to the Stalking Horse, (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the United States Attorneys for the District of Delaware, the Northern District of California and the Eastern District of New York; (i) the Attorneys General for the states of California and New York; (j) the United States Food and Drug Administration; (k) the parties included on the Debtor's list of

7

twenty (20) largest unsecured creditors; (l) all parties who are known to assert a lien upon the Debtor's assets; and (m) all parties who have requested notice under Bankruptcy Rule 2002.

### Miscellaneous

14.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

15.    To the extent any provision of this Order is inconsistent with the Amended Motion or the Amended LOI, the terms of this Order shall control.

16.    This Order shall be binding on all successors and assigns, including any trustee appointed in this chapter 11 case.

17.    Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in such rules is hereby expressly waived and shall not apply.

18.    This Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order.

Dated: March 23, 2016
    Wilmington, Delaware

HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

QB\39131424.2

## EXHIBIT 1

**[Bidding Procedures]**

**Exhibit 1**

**BIDDING PROCEDURES**

Set forth below are bidding procedures (the "Bidding Procedures") to govern the Debtor's investigation, receipt and consideration of competing proposals (individually, a "Proposed Transaction" and collectively, the "Proposed Transactions") from interested parties to acquire New Common Stock (as defined herein) pursuant to either a Primary Plan Transaction or a Secondary Plan Transaction (each term as defined herein).

A.    Definitions

1.    All capitalized terms used but not otherwise defined herein shall have the meanings given to them in:

(a)    first, the *Order: (I) Approving Letter Of Intent And Term Sheet With Cheval Holdings, Ltd., Black Horse Capital LP And Black Horse Capital Master Fund Ltd.; (II) Approving Bidding Procedures Governing Submission And Consideration Of Competing And Supplemental Plan Sponsorship Proposals; (III) Approving Breakup Fee; (IV) Scheduling And Authorizing The Debtor To Conduct An Auction Pursuant To Such Procedures; And (V) Granting Related Relief*, entered March [●], 2016 [D.I. ●] (the "Bid Procedures Order"); and

(b)    second, if not defined in the Bid Procedures Order, the *Debtor's Motion For An Order: (I) Approving Letter Of Intent And Term Sheet With Cheval Holdings, Ltd., Black Horse Capital LP And Black Horse Capital Master Fund LTD.; (II) Approving Bidding Procedures Governing Submission And Consideration Of Competing And Supplemental Plan Sponsorship Proposals; (III) Approving Breakup Fee; (IV) Scheduling And Authorizing The Debtor To Conduct An Auction Pursuant To Such Procedures; And (V) Granting Related Relief*, dated March 10, 2016 [D.I. ●] (the "Bid Procedures Motion"); and

(c)    third, if not defined in the Bid Procedures Order or the Bid Procedures Motion, title 11 of the United States Code (as amended, the "Bankruptcy Code") or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as applicable.

2.    In addition, in these Bidding Procedures, the terms below are defined as follows:

(a)    "Affiliate" means, with respect to any person or entity, any other person or entity that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such person or entity, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such person or entity, whether through ownership of voting securities, by contract or otherwise.

(b)    "Bankruptcy Case" means the chapter 11 case of the Debtor pending before the Bankruptcy Court as Case No. 15-12628 (LSS).

1

(c)    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware, before which the Bankruptcy Case is pending.

(d)    "Debtor" means KaloBios Pharmaceuticals, Inc., the debtor in the Bankruptcy Case.

(e)    "LOI" means the Amended Letter of Intent and annexed Amended Term Sheet, each dated March 18, 2016, between the Debtor and the Stalking Horse. A copy of the LOI is attached as Exhibit A to the *Notice Of Amendment To Debtor's Motion For An Order: (I) Approving Letter Of Intent And Term Sheet With Cheval Holdings, Ltd., Black Horse Capital LP And Black Horse Capital Master Fund Ltd.; (II) Approving Bidding Procedures Governing Submission And Consideration Of Competing And Supplemental Plan Sponsorship Proposals; (III) Approving Breakup Fee; (IV) Scheduling And Authorizing The Debtor To Conduct An Auction Pursuant To Such Procedures; And (V) Granting Related Relief,* dated March 18, 2016 (D.I. 273).

(f)    "New Common Stock" means common equity in the Reorganized Debtor to be authorized and issued on the effective date of the confirmed Plan to replace the existing equity interests in the Debtor.

(g)    "Plan" means a chapter 11 plan of reorganization proposed by, and applicable to, the Debtor, including all exhibits and supplements thereto, as the same may be amended modified or supplemented.

(h)    "Primary Plan Sponsor" means the Proposed Bidder or Qualified Bidder, as applicable, proposing a Primary Plan Transaction.

(i)    "Primary Plan Transaction" means a Proposed Transaction for a Primary Plan Sponsor and/or its Affiliates to acquire New Common Stock that would, if consummated: (1) result in the Primary Plan Sponsor and/or its Affiliates holding in excess of 30% of the New Common Stock to be authorized and issued under the Plan; or (2) if the Primary Plan Sponsor and its Affiliates do not include the Stalking Horse, render the Debtor unable to issue New Common Stock to the Stalking Horse in the amounts required and on the terms required by the LOI.

(j)    "Reorganized Debtor" means the Debtor, as reorganized pursuant to a plan of reorganization that has been confirmed by order of the Bankruptcy Court and become effective by its terms.

(k)    "Secondary Plan Sponsor" means the Proposed Bidder or Qualified Bidder, as applicable, proposing a Secondary Plan Transaction.

(l)    "Secondary Plan Transaction" means a Proposed Transaction for a Secondary Plan Sponsor and/or its Affiliates to acquire New Common Stock that would, if consummated: (1) result in the Secondary Plan Sponsor and/or its Affiliates holding 30% or less of the New Common Stock to be authorized and issued under the Plan; and (2) not interfere with the Debtor's ability to issue New Common Stock to the Stalking Horse in the amounts required and on the terms required by the LOI.

2

      (m)    "Stalking Horse" means collectively (i) Black Horse Capital Master Fund LTD, as agent for the DIP Financing (as such term is used in the LOI), and Cheval Holdings, LTD., Black Horse Capital LP, Black Horse Capital Master Fund LTD., Nomis Bay LTD, and any other persons or entities acting as lenders for the DIP Financing, and (ii) Cheval Holdings, LTD., Black Horse Capital LP, Black Horse Capital Master Fund LTD., Nomis Bay LTD, and any other persons or entities jointly investing with them to provide the Exit Financing (as such term is used in the LOI). For the avoidance of doubt, the term "Stalking Horse," as used herein, also includes each person or entity that is a permitted assignee of the foregoing persons and entities.

      B.    Participation Requirements and Due Diligence

      1.    In order to participate in the bidding process and the Auction (as defined below), a person or entity interested in pursuing a Proposed Transaction (each, a "Potential Bidder") must first deliver the following materials to the Debtor and its advisors:

      (a)    An executed confidentiality agreement in form and substance satisfactory to the Debtor and its advisors (the "Confidentiality Agreement"). Without limiting the foregoing sentence, the Confidentiality Agreement will provide that all non-public information about the Debtor, its property and interests in property received by a Potential Bidder will be kept strictly confidential in accordance therewith and used only in connection with analyzing a Proposed Transaction.

      (b)    Written evidence that enables the Debtor and its advisors to reasonably determine whether a Potential Bidder has the financial, operational, and other ability to close Proposed Transaction and provide adequate assurance of future performance under all contracts and leases to be assumed in connection therewith.

      2.    On or before April 7, 2016 (the "SPA Posting Date"), the Debtor or its advisors shall post in the Debtor's data room these Bidding Procedures, together with copies of: (a) for reference and use by Potential Bidders preparing a Bid for a Primary Plan Transaction, substantially complete definitive documentation in the form of a stock purchase agreement and/or other or related agreements executed by the Debtor and the Stalking Horse, each in PDF and WORD formats (collectively, the "Stalking Horse SPA"); and (b) for reference and use by Potential Bidders preparing a Bid for a Secondary Plan Transaction, a proposed form of stock purchase agreement and/or other and related agreements, each in WORD format (collectively, a "Secondary SPA Exemplar"); *provided, however,* if the Stalking Horse SPA has not been fully executed by SPA Posting Date, the Debtor or its advisors shall post in the data room for the reference and use by Potential Bidders preparing a Bid for a Primary Transaction, a WORD copy of proposed forms of stock purchase agreement and/or other or related agreements for the Primary Plan Transaction (the "Primary SPA Exemplar," and together with the Secondary SPA Exemplar, the "SPA Exemplar"). For purposes of these Bidding Procedures, the term "Plan Sponsor SPA" shall mean: (a) in connection with a Primary Plan Transaction, the Stalking Horse SPA, unless the Stalking Horse SPA has not been fully executed and posted in the Debtor's data room, in which case the term shall refer to the Primary SPA Exemplar; and (b) in connection with a Secondary Plan Transaction, the Secondary SPA Exemplar.

3.      All Potential Bidders, whether deemed Qualified Bidders (as defined below) or not, consent to the jurisdiction of the Bankruptcy Court to determine matters concerning the Proposed Transaction and their bids (each, a "Bid") (whether or not one is made), the Auction, or the marketing process generally and waive any right to any other venue.

4.      Any Potential Bidder wishing to conduct due diligence concerning a Proposed Transaction shall be granted (i) reasonable access to the Debtor's management during normal business hours and (ii) access to all relevant information regarding the business of the Debtor reasonably necessary to enable a Potential Bidder to evaluate the Proposed Transaction. The Debtor shall make such document access available to Potential Bidders through an electronic data room as soon as reasonably practicable following execution of the Confidentiality Agreement.  Potential Bidders interested in conducting due diligence should contact the Debtor's financial advisor ("Batuta"): Alexandre, Zyngier, Managing Director, Batuta Capital Advisors LLC, 475 Park Avenue South, 12th Fl., New York, NY 10016, ph: (212) 726-6937, email: azyngier@batutaadvisors.com.   Notwithstanding the foregoing, Batuta is not required to provide confidential, business-sensitive or proprietary information to any person if the Debtor reasonably believes that such disclosure would be detrimental to the interests of the Debtor's estate.  All due diligence must be completed before the Bid Deadline (as defined below).  No condition(s) allowing or regarding further due diligence will be accepted after the Bid Deadline unless otherwise determined by the Debtor. Potential Bidders are required to exercise their own discretion before relying on any information provided by the Debtor regarding the Proposed Transaction. Neither the Debtor nor its representatives or advisors are responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders pursuant hereto.

5.      The Debtor and its advisors shall: (i) receive and evaluate any Bids from Potential Bidders; (ii) negotiate offers made for Proposed Transactions; (iii) request information from Potential Bidders, engage in discussions with Potential Bidders, and take such other actions to determine whether any Bid constitutes or could lead to a Qualified Bid (as defined below); and (iv) take any other actions contemplated under these Bidding Procedures.

C.      Submission of Bids

1.      Any Potential Bidder interested in the Proposed Transaction, whether such Proposed Transaction is a Primary Plan Transaction or a Secondary Plan Transaction, must submit a Bid prior to **4:00 p.m. prevailing Eastern Time on April 20, 2016** (the "Bid Deadline"). In order for a Bid to be considered, it must be a "Qualified Bid." A Potential Bidder will be deemed to be a "Qualified Bidder" if the Debtor and its advisors, in their sole discretion, determine that such Potential Bidder submitted a Qualified Bid.  For the avoidance of doubt, the Stalking Horse shall automatically be a Qualified Bidder and its Bid shall automatically be a Qualified Bid so long as the Stalking Horse SPA has been fully executed prior to the Bid Deadline, the Stalking Horse is not in default of its material obligations under the LOI or the Stalking Horse SPA, or an Event of Default has occurred under the LOI and not been cured prior to the Bid Deadline.

2.      A Bid will be considered a "Qualified Bid" only if the Bid satisfies each of the following requirements (capitalized terms used in this section are defined later in the Bidding Procedures):

4

(a)    The Bid is for the acquisition of shares of New Common Stock pursuant to the terms of the Bidder Agreement (as defined herein) that contains the applicable economic terms required by Subparagraph C.2(b) below and other terms at least as favorable to the Debtor's estate than the Stalking Horse SPA, as determined by the Debtor in its sole discretion; and

(b)    The Bid either:

(i)    If a Bid for a Primary Plan Transaction, contains terms consistent with the requirements for a Primary Plan Transaction and proposes a minimum purchase price, including any assumption of liabilities, that in the Debtor's business judgment, has a value greater than the aggregate of (1) the total consideration to the Debtor set forth in the LOI, plus (2) the Cash Option Breakup Fee, plus (3) $200,000 on account of the Breakup Attorneys' Fees, plus (4) $500,000; or

(ii)    If a Bid for a Secondary Plan Transaction, contains terms consistent with the requirements for a Secondary Plan Transaction and proposes a minimum purchase price for New Common Stock of at least $1,000,000; and

(c)    The Bid is accompanied by the Potential Bidder's written representation to the Debtor that such Potential Bidder:

(i)    Is an "accredited investor" as defined in Rule 501(a)(1), (a)(2), (a)(3), (a)(7) or (a)(8) under the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder; and

(ii)    Either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of evaluating the merits and risks of the prospective investment in the New Common Stock; and

(iii)    Such Potential Bidder is able to bear the economic risk of an investment in the New Common Stock; and

(d)    The Bid provides that it shall remain irrevocable until the earlier of (x) the Effective Date of the Plan implementing the Winning Bid(s) (as defined below) or (y) June 30, 2016; and

(e)    The Bid is made by a person or entity that reasonably demonstrates evidence of fully committed and firm financing for each component of debt or equity in support of such Bid and other ability to consummate the Proposed Transaction, in each case solely acceptable to the Debtor; and

(f)    The Bid provides for the Primary Plan Transaction or Secondary Plan Transaction that is the subject thereof to be fully consummated and funded by the Potential Bidder and/or its Affiliates no later than June 30, 2016; and

(g)    The Potential Bidder provides written evidence that the Potential Bidder has obtained authorization and approval from its board of directors (or comparable

5

governing body) with respect to the submission of its Bid and the execution of the agreements associated therewith, or a representation that no such authorization or approval is required; and

(h)    The Bid provides that any cash portion of the purchase price will be paid in cash, cash equivalents, or such other consideration acceptable to the Debtor in its sole discretion; and

(i)    The Potential Bidder provides by wire transfer of immediately available funds, in the form of cash or a letter of credit, to an escrow agent designated by the Debtor before the Bid Deadline of an earnest money cash deposit (the "Deposit") of:

(i)    If a Bid for a Primary Plan Transaction, not less than $750,000; or

(ii)    If a Bid for a Secondary Plan Transaction, not less than $250,000; and

(j)    The Potential Bidder provides evidence reasonably satisfactory to the Debtor that the Potential Bidder is reasonably likely to obtain prompt regulatory approval, if any is required, to consummate the Proposed Transaction; and

(k)    The Bid is submitted in the form of a legally binding stock purchase agreement and/or other or related agreements (collectively, the "Bidder Agreement"), fully executed by the Potential Bidder in a clean copy and marked to show the proposed changes to the Plan Sponsor SPA in a redlined copy, that further:

(i)    Identifies the Potential Bidder and any Affiliates who are also submitting a Bid (even if not members of the same investor group), if applicable; and

(ii)    Is not subject to any conditions, representations, or terms that the Debtor determines to be unacceptable; and

(iii)    Describes with specificity the total consideration proposed to be paid to the Debtor's estate in the Proposed Transaction; and

(iv)    Is not conditioned upon the Bankruptcy Court's approval of any Bid protections, such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment; and

(v)    Is not conditioned upon tax or other due diligence; and

(vi)    Does not contain any condition to closing of the Proposed Transaction relating to the receipt of any third party approvals (excluding required Bankruptcy Court approval and any required governmental and/or regulatory approval or third party consents required under the Stalking Horse SPA); and

(vii)    Expressly acknowledges and represents that the Potential Bidder: (A) has had an opportunity to conduct any and all due diligence regarding the Proposed

Transaction prior to making its Bid, (B) has relied solely upon its own independent review, investigation and/or inspection of any documents in making its Bid or that of any of its legal, financial or other advisors, and (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business of the Debtor or the Proposed Transaction, or the completeness or accuracy of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Bidder Agreement ultimately accepted and executed by the Debtor; and

(viii)    Identifies each and every executory contract and unexpired lease that the Potential Bidder desires the Debtor to assume or reject under the Plan at the closing and provides evidence of such Potential Bidder's ability to provide adequate assurance of future performance of such contracts or leases to be assumed (as required by section 365(b)(1)(C) of the Bankruptcy Code) along with the Bid; and

(ix)    Contains other information reasonably required by the Debtor and its advisors; and

(l)    A Potential Bidder that desires to make a Bid must deliver written electronic copies of its Bid prior to the Bid Deadline to:

(i)    The Debtor: KaloBios International, Inc., Attn: Dr. Cameron Durrant, MD, DRCOG, MRCGP, MBA (email: kbioplanbids@gmail.com);

(ii)    Debtor's Counsel: (A) Hogan Lovells US LLP, 875 Third Avenue, New York, NY 10022, Attn: Peter Ivanick, Esq. (email: peter.ivanick@hoganlovells.com); and (B) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Fl., Wilmington, DE 19801, Attn: Eric D. Schwartz, Esq., and Gregory W. Werkheiser, Esq. (email: eschwartz@mnat.com; gwerkheiser@mnat.com); and

(iii)    Debtor's Financial Advisor: Batuta Capital Advisors LLC, 475 Park Avenue South, 12th Fl., New York, NY 10016, Attn: Alexandre Zyngier (email: azyngier@batutaadvisors.com).

(m)    After the Bid Deadline, the Debtor shall determine which Bids, if any, are Qualified Bids and which of the Qualified Bids represent(s) the then-highest or otherwise best Bid for a Primary Plan Transaction and for a Secondary Plan Transaction (each, the "Initial Highest Bid" and the entity submitting such Bid, the "Initial Highest Bidder"). At least one business day prior to the Auction, each Qualified Bidder that timely submitted a Qualified Bid (including, for the avoidance of doubt, the Stalking Horse) will be advised of such Initial Highest Bids and the Debtor shall distribute copies of such Initial Highest Bids (with the identities of other Qualified Bidders redacted) to other Qualified Bidders that have submitted Qualified Bids for a Primary Plan Transaction or Secondary Plan Transaction, as applicable.

3.    Due Diligence from Potential Bidders or Qualified Bidders.

(a)    Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtor or its advisors regarding such Potential Bidder's financial

7

wherewithal to consummate and perform obligations in connection with the Proposed Transaction. Failure by a Potential Bidder to comply with requests for additional information may be a basis for the Debtor and its advisors to determine that a Potential Bidder is not a Qualified Bidder. Similarly, each Qualified Bidder shall comply with all reasonable requests for additional information by the Debtor or its advisors regarding such Qualified Bidder's financial wherewithal to consummate and perform obligations in connection with the Proposed Transaction as the Auction progresses. Failure by a Qualified Bidder to comply with requests for additional information may be a basis for the Debtor and its advisors to determine that the Qualified Bidder may no longer participate in the Auction. The Debtor may disqualify any Qualified Bidder and Qualified Bid from participation in the Auction in the Debtor's discretion.

      4.     <u>"As Is, Where Is"</u>

      (a)     The sale of the New Common Stock pursuant to a Proposed Transaction shall be without representations or warranties of any kind, nature or description by the Debtor, its advisors, agents or estate, or any other party, except to the extent set forth in the Stock Purchase Agreement between the Debtor and the Winning Bidder (as defined below). Except as otherwise provided in the Winning Bidder's Stock Purchase Agreement, the New Common Stock shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests therein (collectively, the "<u>Claims</u>") pursuant to section 363(f) of the Bankruptcy Code, such Claims to attach to the net proceeds of the sale of the New Common Stock, with the same validity and priority as existed immediately prior to such sale.

      5.     <u>The Auction</u>

      (a)     If one or more Qualified Bids has been submitted for a Proposed Transaction in accordance with these Bidding Procedures, the Debtor will conduct an Auction on **April 26, 2016, at 10:00 a.m. prevailing Eastern time**, with respect to such Qualified Bids in order to determine the highest and best Bid(s) (the "<u>Winning Bid(s)</u>") to submit for approval by the Bankruptcy Court at the Approval Hearing (as defined below). The Auction shall be organized and conducted by the Debtor at the offices of its counsel, Hogan Lovells US LLP, 875 Third Avenue, New York, NY 10022, or such other location as may be announced prior to the Auction to the Auction Participants. The Auction will be recorded by stenographic means by an authorized court reporter.

      (b)     The only persons or entities who will be permitted to Bid at the Auction are the authorized representatives of each Qualified Bidder (the "<u>Auction Participants</u>"). While only the Auction Participants may make Qualified Bids at the Auction, the Auction may be attended and viewed also by the Debtor, any creditor, shareholder, party-in-interest and their respective advisors and/or other authorized representatives. Any other person wishing to attend the Auction may do so by contacting, no later than three (3) days prior to the start of the Auction, [Hogan Lovells US LLP, 875 Third Avenue, New York, NY 10022, Attn: John D. Beck, Esq., Tel: (212) 918-3076, email: john.beck@hoganlovells.com.

      (c)     Each Qualified Bidder shall be required to represent that it has not engaged in any collusion with respect to the marketing process or the Proposed Transaction.

(d)     The Auction shall be conducted by the Debtor in accordance with such procedures and requirements as may be established at the discretion of the Debtor and its advisors to result in the highest and best offer for a Proposed Transaction, which rules shall be announced prior to commencement of the Auction, and may include the determination of the amount of time between Qualified Bids, the conducting of multiple rounds of open bidding, and to declare that the Auction has ended when no further Bids are timely made or otherwise. The Debtor may waive and/or employ and announce at the Auction additional rules that are reasonable under the circumstances for conducting the Auction provided that such rules are: (i) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules of the Bankruptcy Court, or any order of the Bankruptcy Court entered in connection with the Debtor's Bankruptcy Case; (ii) disclosed to each Qualified Bidder; and (iii) do not modify the provisions of Subparagraph C.5(e) below.

(e)     The first Qualified Bid at the Auction shall be deemed to have been made by the Initial Highest Bidder for a Primary Plan Transaction or Secondary Plan Transaction, as applicable, in the amount of the Initial Highest Bid for such transaction type. A Qualified Bidder for a Secondary Plan Transaction that has not submitted a Qualified Bid for a Primary Plan Transaction by the Bid Deadline shall not be authorized to bid at the auction for a Primary Plan Transaction. Thereafter, the Auction will continue in the manner determined by the Debtor above; *provided, however,* (i) additional Bids must be Qualified Bids (except that such subsequent additional or revised Qualified Bids made at the Auction need not be received by the Bid Deadline) and (ii) additional Qualified Bids must be made in higher increments of at least $250,000 in cash for any Primary Plan Transaction or $100,000 in cash for any Secondary Plan Transaction (the "Minimum Bid Increment").

(f)     The Debtor shall determine, subject to final determination(s) by the Bankruptcy Court as to the Winning Bid(s) and the Winning Bidder(s), whether a Qualified Bid by a Qualified Bidder at the Auction matches or is higher and better than the prior Qualified Bid.

(g)     At the conclusion of the Auction, the Debtor shall: (i) select the highest and best offer for a Primary Plan Transaction and a Secondary Plan Transaction (each, a "Winning Bid"); (ii) notify the person(s) that made the Winning Bid(s) (the "Winning Bidder(s)") that the offer of such person(s) has/have been determined by the Debtor to be the Winning Bid(s), subject only to Bankruptcy Court approval; and (iii) file a notice with the Bankruptcy Court announcing the Winning Bidder(s) and conduct a hearing for approval of same at the nearest upcoming date scheduled for approval of the disclosure statement to accompany the Plan (the "Disclosure Statement Hearing") or at an intervening hearing scheduled by the Bankruptcy Court (such hearing, whether the Disclosure Statement Hearing or an intervening hearing scheduled by the Bankruptcy Court, the "Approval Hearing"). Prior to the commencement of the Approval Hearing, the Winning Bidder(s) shall complete and sign all agreements and documents as necessary to bind the Winning Bidder(s) to all of the terms and conditions contemplated by their respective Winning Bid(s).

(h)     If either (x) no Qualified Bids other than the Stalking Horse SPA are received by the Debtor by the Bid Deadline or (y) the only Qualified Bid received by the Debtor by the Bid Deadline (other than the Stalking Horse SPA) is for a Secondary Plan Transaction, the Debtor shall not hold an Auction, and the Stalking Horse SPA and, if one has

9

been received, the sole Qualified Bid received for a Secondary Plan Transaction shall be the Winning Bid(s). Further, the Debtor reserves the right, in its sole discretion, to cancel the Auction as to Secondary Plan Transactions if the Qualified Bids received for Primary Plan Transactions are such that the Debtor determines that a Secondary Plan Transaction will be unnecessary to consummate its Plan.

(i)     Each Winning Bidder's Deposit (if not the Stalking Horse) shall be applied by the Debtor against the purchase price to be paid by such Winning Bidder or held by the Debtor and forfeited, as the case may be.

(j)     The Debtor shall not be deemed to have finally accepted any Qualified Bid unless and until such Qualified Bid and the Debtor's acceptance thereof have been authorized by order of the Bankruptcy Court following the conclusion of the Approval Hearing.

6.     <u>Deposits</u>

(a)     No later than three (3) business days after the Auction, the Debtor (or escrow agent) shall return to each Qualified Bidder (other than the Winning Bidder(s)) its Deposit.

**EXHIBIT 2**

**[Procedures Notice]**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| KaloBios Pharmaceuticals, Inc., | |
| | Case No. 15-12628 (LSS) |
| Debtor.[1] | |
| | **Re: D.I. 238, 273 & \_\_\_** |

### NOTICE OF BIDDING PROCEDURES AND AUCTION FOR
### PROPOSED TRANSACTIONS TO ACT AS PRIMARY OR SUPPLEMENTAL
### SPONSOR OF DEBTOR'S PLAN OF REORGANIZATION

PLEASE TAKE NOTICE that on March 10, 2016, KaloBios Pharmaceuticals, Inc., the debtor and debtor in possession (the "Debtor") in the above-captioned case (the "Chapter 11 Case") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), filed a motion (D.I. 238) (the "Motion"), as amended by the notice of amendment filed on March 18, 2016 (D.I. 273) (the "Amendment Notice," and together with the Motion, the "Amended Motion")[2] with the United States Bankruptcy Court for the District of Delaware (the "Court") for an order pursuant to sections 105(a), 363(b), 503 and 507 of the Bankruptcy Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware: (a) approving that certain Amended Letter of Intent and annexed Amended Term Sheet, each dated March 18, 2016 (as attached as Exhibit A to the Amendment Notice, the "Amended LOI"), between (i) the Debtor and (ii) Nomis Bay LTD and funds managed by Black Horse Capital LP, Black Horse Capital Master Fund Ltd. and Cheval Holdings, Ltd. (collectively with such additional parties and assignees ad permitted by the Amended LOI, the "Stalking Horse"); (b) establishing bidding procedures (the "Bidding Procedures") for submission and consideration of competing and supplemental plan sponsorship proposals (such proposals, "Proposed Transactions") for the Debtor's plan of reorganization (the "Plan"); (c) approving the Breakup Fee; (d) scheduling and authorizing the Debtor to conduct an auction to select the highest and best Proposed Transaction(s) (the "Auction"); and (e) granting certain related relief.

PLEASE TAKE FURTHER NOTICE that on [•], 2016, the Court entered an order (D.I. [•]) (the "Bid Procedures Order"). The Bid Procedures Order, among other things: (a) approved the Amended LOI; (b) approved the Bidding Procedures as attached as Exhibit 1 to the Bid Procedures Order; (c) approved the Breakup Fee; and (d) scheduled and authorized the Debtor to conduct the Auction.

PLEASE TAKE FURTHER NOTICE that, as contemplated by the Bid Procedures Order, the Debtor will consider Proposed Transactions for Primary Plan Transactions and Secondary Plan Transactions. A "Primary Plan Transaction" is a Proposed Transaction for a Primary Plan Sponsor and/or its Affiliates to acquire New Common Stock that would, if consummated: (1) result in the Primary Plan Sponsor and/or its Affiliates holding in excess of 30% of the common equity in the reorganized Debtor to be authorized and issued on the effective date of the confirmed Plan to replace the existing equity interests in the Debtor (the "New Common Stock"); or (2) render the Debtor unable to issue New Common Stock to the Stalking Horse in the amounts required and on the terms required by the Amended LOI. A "Secondary Plan Transaction" is a

---

[1]    The last four digits of the Debtor's federal tax identification number are 7236. The Debtor's address is 442 Littlefield Ave., San Francisco, CA 94080.

[2]    Capitalized terms not defined herein are defined in the Amended Motion or if not defined therein, the Bidding Procedures.

Proposed Transaction for a Secondary Plan Sponsor and/or its Affiliates to acquire New Common Stock that would, if consummated: (1) result in the Secondary Plan Sponsor and/or its Affiliates holding 30% or less of the New Common Stock authorized and issued under the Plan; and (2) not interfere with the Debtor's ability to issue New Common Stock to the Stalking Horse in the amounts required and on the terms required by the Amended LOI.

PLEASE TAKE FURTHER NOTICE that the "Bid Deadline" is **April 20, 2016, at 4:00 p.m. (ET)**. A Potential Bidder that desires to submit a proposal for a Plan Transaction is required under the Bidding Procedures to deliver written electronic copies of all materials comprising its Bid prior to the Bid Deadline to: (i) KaloBios International, Inc., Attn: Dr. Cameron Durrant, MD, DRCOG, MRCGP, MBA (email: kbioplanbids@gmail.com); Debtor's Counsel: (A) Hogan Lovells US LLP, 875 Third Avenue, New York, NY 10022, Attn: Peter Ivanick, Esq. (email: peter.ivanick@hoganlovells.com); and (B) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Fl., Wilmington, DE 19801, Attn: Eric D. Schwartz, Esq., and Gregory W. Werkheiser, Esq. (email: eschwartz@mnat.com; gwerkheiser@mnat.com); and (iii) Debtor's Financial Advisor: Batuta Capital Advisors LLC, 475 Park Avenue South, 12th Fl., New York, NY 10016, Attn: Alexandre Zyngier (email: azyngier@batutaadvisors.com). **Unless otherwise agreed by the Debtor, any person or entity that does not submit a bid by the Bid Deadline shall not be permitted to participate in the Auction.**

PLEASE TAKE FURTHER NOTICE that, pursuant to the Bid Procedures Order, if, by the Bid Deadline, the Debtor receives one or more Qualified Bids for a Primary Plan Transaction (other than the bid by the Stalking Horse Purchaser) or more than one Qualified Bid for a Secondary Plan Transaction, the Debtor shall conduct the Auction on **April 26, 2016, commencing at 10:00 a.m. (ET)**, at the offices of Hogan Lovells US LLP, 875 Third Avenue, New York, NY 10022, or such other location as may be announced prior to the Auction to the Auction Participants. If Qualified Bids are not received by the Debtor as stated in the immediately preceding sentence, the Debtor will not hold the Auction.

PLEASE TAKE FURTHER NOTICE that any person or entity wishing to submit a bid for a Proposed Transaction is urged to review the Bidding Procedures, the Bid Procedures Order and the Amended Motion. Copies of the Amended Motion and the exhibits thereto, and the Bidding Procedures Order (including the Bidding Procedures attached as Exhibit 1 to the Bidding Procedures Order) may be (a) reviewed during regular Court hours at the United States Bankruptcy Court, 824 N. Market Street, Wilmington, Delaware 19801, (b) reviewed electronically on www.deb.uscourts.gov, the official website for the Court, or (c) reviewed electronically on the Debtor's court-appointed claims and noticing agent website at https://cases.primeclerk.com/kalobios/.

**Hogan Lovells US LLP**
Peter A. Ivanick
Pieter Van Tol
John D. Beck
875 Third Avenue
New York, NY 10022
(212) 918-3000

**Morris, Nichols, Arsht & Tunnell LLP**
Eric. D. Schwartz (No. 3134)
Gregory W. Werkheiser (No. 3553)
Matthew B. Harvey (No. 5186)
Marcy J. McLaughlin (No. 6148)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

9907902.2